CASE NOS. 21-55118 AND 21-55157
UNITED STATES COURT OF APPEALS
NINTH CIRCUIT

_____

CHRISTOPHER GARNIER AND KIMBERLY GARNIER,
Plaintiffs/Appellees/Cross-Appellants,

v.

MICHELLE O'CONNOR-RATCLIFF AND T.J. ZANE,
Defendants/Appellants/Cross-Appellees.

_____

Cross-Appeals from the United States District Court
Southern District of California
The Honorable Roger T. Benitez
District Court Case no. 3:17-cv-02215-BEN-JLB

_____

**PLAINTIFFS/APPELLEES/CROSS-APPELLANTS CHRISTOPHER GARNIER AND
KIMBERLY GARNIER'S PRINCIPAL CROSS-APPEAL BRIEF AND RESPONSE BRIEF**

_____

*Cory J. Briggs (SBN 176284)
BRIGGS LAW CORPORATION
99 East "C" Street, Suite 111
Upland, CA 91786
Telephone: (909) 949-7115
Email: cory@briggslawcorp.com

Attorneys for Plaintiffs/Appellees/Cross-Appellants
CHRISTOPHER GARNIER AND KIMBERLY GARNIER

## Disclosure Statement

There is no non-governmental corporation (within the meaning of Federal Rule of Appellate Procedure 26-1) as a party to this lawsuit.

Dated: October 22, 2021.        s/ Cory J. Briggs

# Table of Contents

Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.     Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.    District Court Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.    Appellate Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.    Filing Dates, Timeliness, and Finality. . . . . . . . . . . . . . . . . . . . 9

III.    Issues Presented for Review by Cross-Appeal . . . . . . . . . . . . . . . . . . . 10

IV.     Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.      Summary of Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.     Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        B.    Plaintiffs' Cross-Appeal: Qualified Immunity Was Inapplicable. . . 18

        C.    Defendants' Appeal: The Judgment Is Correct . . . . . . . . . . . . . . . 22

              1.    Defendants' Social-Media Pages Were Governmental in
                    Nature and the Manner of the Pages' Use Shows State
                    Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

              2.    Defendants' Indefinite Ban Violated Plaintiffs'
                    Constitutional Rights to Free Speech . . . . . . . . . . . . . . . . . . 27

              3.    Defendants' Use of "Word Filters" Does Not Cure or
                    Avoid the Constitutional Violations Here. . . . . . . . . . . . . . . 29

D.    Defendants' Appeal: A Determination on Fees/Costs Is Premature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    1.    The Motions' Denial Is Not Appealable . . . . . . . . . . . . . . . . 31

    2.    Attorney Fees and Costs Are Recoverable under Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

VII.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Certification of Word Count. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## Table of Authorities

Judicial Authorities

*Anderson v. Creighton*, 483 U.S. 635 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . 18

*Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004) . . . . . . . . . . . . . . . . 16

*Butz v. Economou,* 438 U.S. 478 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Choose Energy, Inc. v. American Petrol. Inst.*,
    87 F.Supp.3d 1218 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*City of Phoenix v. Com/Systems, Inc.*, 706 F2d 1033 (9th Cir. 1983). . . . . . . . . . 22

*Coomes v. Edmonds School Dist. No 15*, 816 F3d 1255 (9th Cir. 2016) . . . . . . . 17

*Cornelius v. NAACP Legal Defense & Educ. Fund,*
    473 U.S. 788 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 28

*Davison v. Randall,* 912 F.3d 666 (4th Cir. 2019). . . . . . . . . . . . . . . . . . . 24, 25, 26

*Dawson v. City of Seattle*, 435 F.3d 1054 (9th Cir. 2006). . . . . . . . . . . . . . . 17, 33

*Dutta v. State Farm Mutual Automobile Ins. Co.,*
    895 F3d 1166 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ecological Rights Found v. Pacific Lumber Co.,*
    230 F3d 1141 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Griswold v. Connecticut*, 381 U.S. 479 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hartman v. Moore*, 547 U.S. 250 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hope v. Pelzer*, 536 U.S. 730 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Husain v. Olympic Airways*, 316 F.3d 829 (9th Cir. 2002) . . . . . . . . . . . . . . . . . 17

*Imbler v. Pachtman*, 424 U.S. 409 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Koala v. Khosla*, 931 F.3d 887 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lefemine v. Wideman*, 568 U.S. 1 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 33

*Miles v. California*, 320 F. 3d 986, 988 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . 33

*Mulligan v. Nichols*, 835 F.3d 983 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . 18

*New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090 (C.D. Cal. 2004) . . . . . . . . . . . 19

*Norse v. City of Santa Cruz*, 629 F. 3d. 966 (9th Cir. 2010) . . . . . . . . . . . . . . . 28

*Packingham v. North Carolina,* 137 S.Ct. 1730 (2017) . . . . . . . . . . . . . . . . . 19, 27

*Pearson v. Callahan*, 555 S. Ct. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755 (9th Cir. 2006). . . . . . . . . . 18

*Piping Rock Partners, Inc. v. David Lerner Assoc., Inc.*,
    946 F.Supp.2d 957 (N.D. Cal. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Reed v. Lieurance,* 863 F.3d 1196 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . 32

*Reza v. Pearce*, 806 F.3d 497 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959 (9th Cir. 2002) . . . . . . . . . . . . 28

*Save Our Valley v. Sound Transit,* 335 F.3d 932 (9th Cir. 2003) . . . . . . . . . . . . . 33

*Tutor-Saliba Corp. v. City of Hailey,* 452 F.3d 1055 (9th Cir. 2006). . . . . . . . . . 17

*Underwager v. Channel 9 Australia,* 69 F. 3d 361 (9th Cir. 1995). . . . . . . . . . . . 17

*United States v. Classic*, 313 U.S. 299 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . 32

*Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000) . . . . . . . . . . . 17

*West v. Atkins,* 487 U.S. 42 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*White v. City of Norwalk,* 900 F.2d 1421 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . 28

*Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008) . . . . . . . . . . . . . . . . . . . 28

*Wood v. Strickland*, 420 U.S. 308 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Legislative Authorities

28 U.S.C § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1920 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# I. INTRODUCTION

This cross-appeal arises from the District Court's ruling on the motion for summary judgment by Defendants Michelle O'Connor-Ratcliff ("MOR") and Thomas Joseph "T.J." Zane ("Zane") (collectively, "Defendants"), which allowed the complaint by Plaintiffs Dr. Christopher Garnier and Kimberly Garnier (collectively, "Plaintiffs") to proceed based on their request for declaratory and injunctive relief but threw out the portion seeking money damages based on qualified immunity.

Plaintiffs are parents of children in the Poway Unified School District ("PUSD"). Defendants are members of PUSD's Board of Trustees. To update and connect with their constituents on PUSD matters, Defendants are frequent users of social media – specifically, Facebook by both and Twitter by MOR – in their roles as public officials.

Concerned and passionate about all things PUSD – including financial oversight of subordinates by the Board of Trustees, race relations, and government transparency – Plaintiffs were active and outspoken critics of Defendants. Plaintiffs responded to social-media content posted by Defendants on their official accounts by addressing what even Defendants have acknowledged to be serious, persistent, legitimate issues: race, budget and finance, oversight, and transparency. While Defendants would allow and even encouraged their supporters to interact and respond to PUSD-related social-media content, Plaintiffs were altogether prohibited from

participating in Defendants' Facebook and Twitter dialogues. Plaintiffs were, in a word, silenced.

## II. JURISDICTIONAL STATEMENT

### A.     District Court Jurisdiction

The District Court for the Central District of California has jurisdiction pursuant Section 1983 of Title 42 of the U.S. Code ("Section 1983" or "§ 1983").

### B.     Appellate Jurisdiction

This Court has appellate jurisdiction pursuant to Sections 1291 and 1294 of Title 28 of the U.S. Code.

### C.     Filing Dates, Timeliness, and Finality

The District Court entered judgment on January 15, 2021; the judgment is final and therefore appealable. Defendants filed their notice of appeal on February 12, 2021. *See* 9-ER-2159.[1]  Plaintiffs filed this cross-appeal on February 23, 2021. *See* SER-3.   The cross-appeal is timely pursuant to the Federal Rule of Appellate Procedure 4(a)(3).

---

[1] Throughout this brief, Plaintiffs cite to Defendants excerpts of the record as "ER" and cite to their own supplemental excerpts of the record as "SER." The leading number before "ER" or "SER" refers to the volume number, with any trailing number(s) referring to the consecutive page number(s) in that volume. For example, "7-ER-1572" refers to page 1572 in volume 7 of the ER.

### III. ISSUES PRESENTED FOR REVIEW BY CROSS-APPEAL

The sole issue presented by this cross-appeal is whether the District Court properly relied on the doctrine of qualified immunity when it granted summary judgment against the portion of Plaintiffs' Section 1983 claim seeking money damages. Plaintiffs believe that the law made clear to all, long before this lawsuit was filed, that retaliation by public officials against their critics amounts to a violation of the First Amendment. Consequently, Plaintiffs ask this Court to reverse that portion of the District Court's summary-judgment ruling and to remand this lawsuit for further proceeding.

### IV. STATEMENT OF THE CASE

On October 30, 2017, Plaintiffs filed suit to vindicate violations of their rights to free expression and to criticize government officials pursuant to federal and state constitutional rights. *See* 7-ER-1425-1483. Plaintiffs sought general and punitive damages as well as injunctive and declaratory relief for violation of their federal constitutional rights and state constitutional rights. *Id.*

On MOR's Facebook "About" page, she identified herself as the President of PUSD's Board of Education, showed the address for her official PUSD e-mail account, and described herself as a "Government Official." *See* 3-ER-524; 8-ER-1867. Starting in December 2014 (when she was sworn into office), her Facebook posts dealt exclusively with PUSD matters. *See* 3-ER-354-513; 8-ER-1697-1856.

On MOR's Twitter account, she again described herself as the President of PUSD's governing board. *See* 3-ER-526; 8-ER-1868. Her "tweets" also dealt largely with PUSD matters. *See* 3-ER-526-550; 8-ER-1868-1892.

On Zane's Facebook "About" page, he wrote that "[t]his is the official page for T.J. Zane, Poway Unified School District Board Member, to promote public and political information," and described himself as a "Government Official." *See* 4-ER-642; 8-ER-1981. After he was sworn into office in December 2014, his Facebook posts – appearing below his "T.J. Zane, Poway Unified School District Trustee" banner – dealt almost exclusively with PUSD matters. *See* 4-ER-553-629; 8-ER-1893-1969.

Thus, Defendants used social media to communicate with the public – that is, with everyone except Plaintiffs – on a wide variety of PUSD-related topics and to elicit their audience's reaction. In so doing, Defendants were clothed with the authority of state law because they represented their social-media accounts to be those of "Government Official[s]" and PUSD representatives at the highest level.[2]

---

[2] Defendants alone controlled their respective social-media accounts. As noted in the summary-judgment ruling, "[b]esides MOR and Zane, no PUSD employee regulated, controlled, or spent money maintaining any of their social media pages." *See* 2-ER-135:1-2. MOR testified in her deposition that she alone controls her account. *See* 5-ER-1097. Zane testified at trial that he alone could initiate a post on his Facebook account and that he alone had administrative control over the account. 7-ER-1598 & 1606.

Defendants blocked – more accurately, permanently banned – Plaintiffs from responding to the social-media content on these official accounts even though there was no actual disruption caused by Plaintiffs to Defendants' social-media pages. Defendants were never impeded in any way or to any degree by Plaintiffs in creating and publishing their social-media posts. *See* 7-ER-1576-1578 (Mrs. Garnier testifying that she had no difficulty reading Defendants' posts or others' comments thereto due to overall number of comments; clicking on hyperlinks with computer mouse expands and collapses comments), 1591-1592 (Mrs. Garnier testifying that video links posted by her and her husband did not interfere with anyone's viewing of comments to Defendants' content because viewer would have to take additional step of affirmatively clicking hyperlink to view video); 2-ER-308 (declaration of Facebook user explaining that Facebook automatically shrinks large comments and requires viewers to click hyperlink to expand comments). Plaintiffs never wrote anything obscene or that could be considered to incite violence and always stuck to PUSD-related issues. *See* 7-ER-1522 (Mr. Garnier testifying that his comments were never profane or threatening toward Defendants or their families), 1574 (Mrs. Garnier testifying that her comments were never threatening or profane and were always germane to PUSD), 1604-1605 (Zane testifying that Plaintiffs' social-media comments never used profanity or threatened violence and, with one exception, always dealt with PUSD matters); 7-ER-1675 (MOR testifying that Plaintiffs' social-

media comments were never threatening, profane, salacious, or nasty and were blocked solely because of perceived repetition).

Defendants moved for summary judgment and Plaintiffs opposed. In its ruling, the District Court correctly found that Plaintiffs' injuries were "actual and imminent" and denied Defendants' motion with respect to Plaintiffs' requests for injunctive and declaratory relief. *See* 2-ER-140, 156. The District Court rightfully found that Defendants were operating their social-media pages and blocked Plaintiffs under color of state law and that Defendants created designated public forums through their respective social-media pages. *See* 2-ER-142-155. The District Court found that Defendants had created public forums through their social-media accounts by posting interactive content related to their public-official positions, and the interactive portions of their accounts constitute designated public forms because Defendants created spaces for dialogues by allowing comments underneath their Facebook Posts without topic restriction and even interacting with or reacting to users who participated in dialogue. *See* 2-ER-146-155. In error, however, the District Court granted summary judgement with respect to the portion of Plaintiffs' claims seeking money damages, reasoning that the damages were barred by the doctrine of qualified immunity. *See* 2-ER-141-142.

The District Court conducted a two-day bench trial on September 21 and 22, 2020, but decided not to re-adjudicate issues that were previously decided at summary

judgment.[3]  *See* 7-ER-1488-1489.  The only issue left to be adjudicated was whether Plaintiffs were banned from Defendants' social-media accounts due to an actual disruption to those accounts by Plaintiffs, or whether Defendants' explanation for the ban was a pretext and Plaintiffs were in fact blocked because their comments were critical of Defendants' as members of PUSD's governing board.  *See* 7-ER-1489.

Judgment was entered in the case on January 15, 2021.  *See* 1-ER-8.  The District Court ruled in favor of Plaintiffs and found that they had proven the requisite elements for a Section 1983 claim: state action (as previously determined on summary judgment) and the deprivation of a constitutional right (as proven at trial).  *See* 1-ER-9-39.  Because Plaintiffs were blocked for over three years, the District Court found that the blocking was not narrowly tailored to the number or amount of comments drafted by Plaintiffs.  *Id.*  Having found that the blocking was not narrowly tailored, the District Court ruled that Plaintiffs were entitled to their requested injunctive relief.  In the judgment, the District Court ordered Defendants to unblock Plaintiffs from their public Facebook pages and ordered MOR to unblock Mr. Garnier from her public Twitter account.  *See* 1-ER-8.

After judgment was entered in the case, Plaintiffs filed a costs bill and a motion for attorney fees, pursuant to Sections 1983 and 1988 of Title 42 of the U.S. Code and

---

[3]  Judge Whelan ruled on the motion for summary judgment because the case was originally assigned to him.  By the time trial rolled around, the case had been transferred to Judge Benitez.

Section 1920 of Title 28 of the U.S. Code. The Clerk of the Court ordered costs taxed. *See* 1-ER-4-7. Defendants opposed the motion for attorney fees and filed a motion to retax costs. *See* 2-ER-46-52. The District Court denied both motions without prejudice due to the appeal and cross-appeal filed and opted to await the outcome of this appeal before deciding either matter. *See* 1-ER-2-3.

## V. SUMMARY OF ARGUMENTS

For their cross-appeal, Plaintiffs argue that the doctrine of qualified immunity did not apply to the constitutional violations committed by Defendants when they indefinitely banned Plaintiffs from joining and reacting to PUSD-related content published by Defendants on their social-media accounts. The bans were imposed in retaliation for Plaintiffs' exercise of their First Amendment rights to criticize the performance of Defendants as public officials, even though such retaliation has long been recognized by the law as improper. As such, qualified immunity does not apply and Plaintiffs are entitled to seek money damages from Defendants.

On Defendants' appeal of the merits, the Court should uphold the judgment because the District Court did not commit any clear error with respect to the evidence and stayed true to the applicable precedents on legal questions. This Court should therefore affirm the District Court's rulings that: (*i*) Defendants' actions constituted state action and they acted under color of state law when silencing Plaintiffs; (*ii*) blocking Plaintiffs was not narrowly tailored and violated their constitutional rights;

and (*iii*) any potential or alleged use of word filters was not relevant to the public forum because the silencing of Plaintiffs prevented them from participating in any way on the social-media pages, including usage of Facebook's pre-set reactions underneath Defendants' social-media Posts or even having access to read the PUSD-related information MOR authored on her public Twitter page.

Lastly, with respect to Defendants' appeal on the issue of costs and attorney fees, the Court should dismiss the appeal because it is premature. If the Court is inclined to consider that issue on the merits, it should conclude that attorney fees and costs are recoverable in a Section 1983 action even when the only relief provided is declaratory or injunctive based on Supreme Court precedent. *See Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) ("And we have repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that [prevailing-party] test" under Sections 1983 and 1988).

## VI. ARGUMENT

Before turning to Plaintiffs' specific arguments on their cross-appeal and to Defendant's specific arguments in their appeal, Plaintiffs will discuss the standard of review applicable to the District Court's summary-judgment ruling and its final decision on the merits. (The standard applicable to Defendants' appeal on the issue of fees and costs is discussed in the section dealing with that narrow issue.)

### A.    Standard of Review

A district court's decision to grant summary judgment on the ground of qualified immunity is reviewed de novo.  *Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004) (citation omitted).  Whether a plaintiff's federal rights were clearly established at the time of the violation is also a question of law reviewed de novo. *Id*.  In evaluating an order granting summary judgment, appellate courts will not consider evidentiary matters not presented or argued below.  *Coomes v. Edmonds School Dist. No 15*, 816 F.3d 1255, 1261, fn. 4 (9th Cir. 2016).  A district court's decision to deny summary judgment in an action is also reviewed de novo.  *See Weiner v. San Diego County,* 210 F.3d 1025, 1028 (9th Cir. 2000); *Underwager v. Channel 9 Australia,* 69 F. 3d 361, 365 (9th Cir. 1995).

A district court's findings of fact are reviewed for clear error.  *See Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), aff'd (2004) 540 U.S. 644 (citation omitted).  "Clear error review is deferential to the district court, requiring a definite and firm conviction that a mistake has been made. . . .  Thus, if the district court's findings are plausible in light of the record viewed in its entirety, the appellate court cannot reverse even if it is convinced it would have found differently." *Id*.  And while a district court's conclusions of law are reviewed de novo, review will be for "clear error" if the application of the law to the facts requires an inquiry that is essentially factual.  *Id.*

A district court's decision to award or deny attorney's fees in civil rights actions are reviewed for an abuse of discretion. *See Tutor-Saliba Corp. v. City of Hailey,* 452 F.3d 1055, 1059 (9th Cir. 2006). Similarly, an award of costs is also reviewed for an abuse of discretion. *Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006).

If an issue presented for review is correct on any ground appearing in the record, this Court may affirm the ruling when the same result could have been reached on another legal theory or other ground apparent from the record. *Ecological Rights Found v. Pacific Lumber Co.,* 230 F.3d 1141, 1154 (9th Cir. 2000).

### B.     Plaintiffs' Cross-Appeal: Qualified Immunity Was Inapplicable

The doctrine of qualified immunity is inapplicable to the damages portion of Plaintiffs' complaint because it protects public officials from liability for damages only insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The wrongs committed by Defendants in this case violated clearly established rights recognized by controlling authorities. Plaintiffs were blocked from Defendants' PUSD social-media accounts even after this lawsuit was filed, through the time that the summary-judgment motion was decided, and all through trial.

The First Amendment protects an individual's right to criticize public officials. The Ninth Circuit has repeatedly ruled that retaliation for the exercise of one's First Amendment rights amounts to a constitutional violation. *See, e.g., Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010); *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). Indeed, the Supreme Court has itself ruled that public officials cannot retaliate against members of the public for speaking out. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Especially pertinent here is its pronouncement that "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Id*.

Apart from the law's settled nature on the issue of government retaliation against First Amendment activity, it was also clear before this lawsuit was filed that internet platforms enjoyed First Amendment protections. After all, more than four months before this lawsuit was filed, the Supreme Court had described social media as "the modern public square." *Packingham v. North Carolina,* 582 U.S. __, 137 S.Ct. 1730, 1737 (2017). As one federal district court observed, the California Court of Appeal made it abundantly clear way back in January 2004 – more than 13 years before this lawsuit was filed – that the internet is a public forum. *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1107 (C.D. Cal. 2004) ("In fact, the California Court

of Appeal decided on January 21, 2004, that the contention that the internet is not a public forum is a peculiar contention that is difficult to take seriously."); *cf. Choose Energy, Inc. v. American Petrol. Inst.*, 87 F.Supp.3d 1218, 1224 (N.D. Cal. 2015) ("[T]he information is conveyed in a public forum – the internet – and addresses energy policy – an issue that is currently the subject of pending legislative efforts and one of public concern."); *Piping Rock Partners, Inc. v. David Lerner Assoc., Inc.*, 946 F.Supp.2d 957, 976 (N.D. Cal. 2013), aff'd (9th Cir. 2015) 609 Fed.Appx. 497 (declining to adopt view that website can only be public forum where it is "a complete free-for-all").

But decades before *Packingham* and those lower-court cases, the Supreme Court had already made clear that limited forums may be established through policy or practice (though not by inaction). *See Koala v. Khosla*, 931 F.3d 887, 902 (9th Cir. 2019) (citing *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 802 (1985)). "Because designated or limited public fora are by definition created by the state for particular purposes . . . it follows that where an express policy creates a metaphysical forum, the policy itself defines the forum's scope." *Id.* Furthermore, it had been clear over 50 years before this lawsuit was filed that "[t]he right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read. . . ." *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965).

The District Court's summary-judgment ruling that Defendants enjoyed qualified immunity erroneously focused on *where* the retaliation occurred – on social-media platforms – and thus misapplied the law. *See* 2-ER-141 ("...what was not yet established was the First Amendment right to post comments on a public official's Facebook or Twitter page"). The law requires the focus to be on what government officials are accused of doing, not where they did it. Moreover, there does not have to be a prior case squarely on point presenting similar material facts to show that a right was clearly established at the time of conduct; that "rigid gloss on the qualified immunity standard . . . is not consistent with" Supreme Court precedent. *Hope v. Pelzer*, 536 U.S. 730, 739 (2000). All that matters is that the "contours" of the constitutional *right* – not the fact pattern – have been clearly established. *Id.* If the rule were otherwise, public officials could continuously find new avenues and new fora for retaliating against vocal/critical constituents and then wrap themselves in qualified immunity.

Thus, identifying a case in which "the very action in question has previously been held unlawful" is not required. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[T]he *right* the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the *right* must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (emphasis added).

Defendants' unfamiliarity with the contours of the First Amendment in the modern era was inexcusable and unreasonable. As such, this Court should find that Defendants were not entitled to rely on qualified immunity to escape liability for money damages.

### C. Defendants' Appeal: The Judgment Is Correct

Defendants mount multiple challenges against the judgment. As explained below, none of them has any merit.

#### 1. Defendants' Social-Media Pages Were Governmental in Nature and the Manner of the Pages' Use Shows State Action

Defendants contend that the blocking of Plaintiffs on their PUSD social-media pages did not constitute state action because the pages were "private campaign sites," Defendants' role as legislators provided them with authority different from that of executives, and the so-called "campaign sites" received no support from PUSD. All three contentions fail to show a clear factual error or mistake of law below.

First, the evidence admitted below – and to which Defendants never objected[4] – showed that Defendants' social-media pages were not private campaign pages at the

---

[4] Failure to object to the admission of evidence before the trial court, waives the right to raise the issue on appeal and this Court should not review admissibility of testimony if no objection was raised in the District Court. *City of Phoenix v. Com/Systems, Inc.*, 706 F.2d 1033, 1038-1039 (9th Cir. 1983). To preserve an evidentiary challenge, the Defendants would have had to, at a minimum, move to strike or otherwise object to the contested evidence in the District Court. *Dutta v. State Farm Mutual Automobile Ins. Co.,* 895 F.3d 1166, 1172 (9th Cir. 2018).

time Plaintiffs were indefinitely banner.  Even though Defendants both used their

Facebook pages as part of their campaigns to get elected, after they were sworn into

office (in December 2014) they updated their pages to reflect control by "Government

Official[s]" serving at the highest levels of PUSD's leadership.[5]  *See* 3-ER-524

(MOR); 8-ER-1867 (MOR); 4-ER-642 (Zane); 8-ER-1981 (Zane).  MOR's twitter

account described her as the President of PUSD's governing board.  *See* 3-ER-526;

8-ER-1868. After those changes were made, the content that Defendants published

involved almost entirely (if not exclusively) PUSD-related subject matter.  *See* 3-ER-

354-513 & 526-550 (MOR); 8-ER-1697-1856 & 1868-1892 (MOR); 4-ER-553-629

(Zane); 8-ER-1893-1969 (Zane).  Even a cursory review of the evidence shows that

Defendants' social-media pages are decorated with PUSD images and descriptions

and provide constituents with official PUSD contact information.  *See, e.g.*, 8-ER-

1697-1866, 1867, 1868-1892 (MOR); 8-ER-1893-1980 & 1981 (Zane); 9-ER-1983-

1985, 1986, 1987, 1988-1989 & 1990-1994 (MOR).  And notably, Defendants both

have private social-media accounts that they use for non-PUSD matters.  *See* 2-ER-

332 (MOR's deposition testimony); 3-ER-340 (Zane's deposition testimony); 7-ER-

1597 (Zane's trial testimony), 1654 (MOR's trial testimony).

---

[5]  Who, other than a government official, could honestly use Facebook's "Government Official" label?  There record contains no evidence that the label is freely used by persons who are not *bona fide* government officials.

Defendants' social-media pages also provided members of the public with opportunities to communicate with and provide feedback to their elected representatives. *See, e.g.*, 8-ER-1709 (comment to MOR's content by Dawn Lovach Yocum and response thereto by MOR; also showing thumbs-up "like" emoticons), 1898 (comments to Zane's content by Dane White and Barbara Mayers; also showing thumbs-up "like" emoticons). Indeed, MOR testified at trial that she gave some people a thumbs-up emoticon (using the "like" button on Facebook) because "[i]t was nice of them to say something nice." *See* 7-ER-1670-1671; *see also* SER-16-19 (excerpts of MOR's Facebook pages showing her "like" responses various comments by members of the public).

"[Acting] under color of state law requires that the defendant in a § 1983 action has exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law." *West v. Atkins,* 487 U.S. 42, 49 (1988) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)). The Fourth Circuit has found that such consistent messaging, regardless of whether the enumerated duties of the public officials include the maintenance of an online webpage, show that the page is born out of and inextricably linked to their public office and used as a tool of governance. *Davison v. Randall,* 912 F.3d 666, 677-678 (4th Cir. 2019). The Court applied the "totality of the circumstances test" to determine that there was state action. *Id.* at 680. Where a public official's private

actions have a sufficiently close nexus because the conduct and public office and the private actions arose out of public (rather than personal) circumstances, the conduct constitutes conduct under color of state law. *Id.* "A private citizen could not have created and used the [public office] Facebook Page in such a manner." *Id*. at 681(internal citations omitted).

Given the overwhelming amount of evidence, it was therefore not clearly erroneous for the District Court to conclude that Defendants' social-media accounts were used as part of their official duties as public officials acting under color of state law. Their social-media pages were tools of governance.

Next, Defendants contend that their roles as legislators protect them from liability for their retaliation against Plaintiffs. Significantly, Defendants cite no legal authority (other than a single California statute about how school boards make collective decisions) to support the contention. When it comes to Plaintiffs' rights to be free from retaliation from government officials, there is no meaningful distinction. Using the totality of the circumstances test outlined in *Davison, supra,* the social-media sites and the blocking equate to state action. Further, the concurring opinion in *Davison* noted the apparently "open question" of whether an individual public official qualified as a government unit for purposes of creating a public forum, adding that the record was devoid of any evidence about the extent of the defendant's authority as board chair and that extant precedent was therefore binding. *Id.* at 692.

Similarly, the record in this case is devoid of any evidence about the extent of Defendants' authority as members of PUSD's governing board and the outcome here should therefore be the same.

If individual members of a school board could not be liable under Section 1983, there would be no basis for the Supreme Court to make statements like the one it made in *Wood v. Strickland*, 420 U.S. 308 (1975), where, "in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under s 1983 if he knew or reasonably should have known that. . . ." *Id.* at 322. After that holding, the Supreme Court recognized in another case that it has not extended absolute immunity from Section 1983 liability to "school board members." *Imbler v. Pachtman*, 424 U.S. 409, 434 (1976) ("Accordingly, we have declined to construe s 1983 to extend absolute immunity from damage suits to a variety of state officials, *Wood v. Strickland*, . . . (school board members). . . ."); *see also Butz v. Economou* (1978) 438 U.S. 478, 498 ("A school board member would lose his immunity from a § 1983 suit only if. . . ."). In short, Defendants are making a distinction without a difference.

Lastly, Defendants' contention that they did not receive support directly from PUSD for their social-media pages is beside the point using the totality of the circumstances test outlined in *Davison, supra,* 912 F.3d at 680. Again, the evidence at trial shows that Defendants maintained, promoted, and used their social-media

accounts to disseminate information and gather public feedback on PUSD-related matters and that Defendants did so while holding themselves out as "Government Official[s]" serving at the highest level of PUSD's command structure.

## 2. Defendants' Indefinite Ban Violated Plaintiffs' Constitutional Rights to Free Speech

Defendants contend that the blocking Plaintiffs' suffered, which is still occurring, is narrowly tailored. In so doing, they are essentially asking this Court to find that they may lawfully block Plaintiffs indefinitely – effectively silencing Plaintiffs from all future communications or reactions on Defendants' social-media accounts and prohibit them from participating in any future social-media dialogues – before anyone could possibly know what the future communications entail or what Plaintiffs' reactions are.

The internet has long been a vital platform for free speech. The Supreme Court recognizes social media as the "the modern public square." *Packingham, supra,* 137 S.Ct. at 1737. Apart from the technical apparatus used to silence Plaintiffs, what Defendants are asking this Court to condone is no different from allowing a critical constituent who was removed from a government body's public meeting for a narrowly tailored reason – such as violating decorum rules – to be permanently banned from speaking or attending all future meetings. If an individual delivers a critique at a city council meeting and goes beyond the allotted amount of time for

comments – to the point that the presiding officer mutes the critic's microphone – would it be appropriate for the critic to be barred from speaking at a future meeting? The answer is an obvious "no." Silencing critics has long been recognized as unconstitutional. The fact that Defendants wish to continue to block Plaintiffs from their social-media pages indefinitely should only signal to the Court that the blocking was never content-neutral and was always retaliatory.

In a designated public forum, speakers may be excluded when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest. *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 965 (9th Cir. 2002) (citing *Cornelius, supra,* 473 U.S. at 800) (abrogated on other grounds by *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008)). Individuals may only be removed from a designated forum if they have actually disrupted the proceedings in the forum. *Norse v. City of Santa Cruz*, 629 F.3d. 966, 976 (9th Cir. 2010) (C.J. Kozinski and J. Reinhardt concurring). In the context of city council meetings, this Circuit has ruled that speech must disrupt, disturb, or otherwise impede the orderly conduct of the meeting before a speaker could be removed. *White v. City of Norwalk,* 900 F.2d 1421, 1424 (9th Cir. 1990). The decision is to be made based on the disruption, not the reaction of receivers of the speech. A public official's reaction is not a content-neutral basis for regulating speech, and speech cannot be punished or banned simply because it *might* offend a listener. *Norse, supra*, 629 F.3d at 979.

Even if it were found that one's speech caused a disruption, to be completely removed and barred from all future opportunities to speak in retaliation for past public criticisms of a public official exceeds the bounds of reasonableness and can be deemed a violation of an individual's First Amendment rights. *See Reza v. Pearce*, 806 F.3d 497, 504-505 (9th Cir. 2015).

Most shocking, Defendants wish to indefinitely ban Plaintiffs from their pages, while contending that they use word-filters on their social-media pages (discussed further below). Without touching on the legality of filtering words in such public forums, the fact that Defendants wish to continue to block Plaintiffs, even with word filters in place, makes clear that blocking is just Defendants' way of ridding themselves of two highly engaged constituents.

### 3.  Defendants' Use of "Word Filters" Does Not Cure or Avoid the Constitutional Violations Here

Facebook introduced the word-filter feature with the intention of allowing a page administrator to moderate potentially offensive content on their page. Because Facebook is a social-media platform, not a website designed for the one-way presentation of information to a reader, the use of word filters, no matter how many words a user attempts to filter, cannot change the website's true form of allowing users to communicate back and forth. Even if one were able to filter all words in a content-neutral manner, as Zane claims he has attempted to do, that would not prevent

users who are not blocked from expressing non-verbal reactions in response to Defendants' content through the use of emoticons. Because Plaintiffs are completely blocked, however, they cannot even react with a thumbs up or thumbs down. They remain silenced, as a factual matter and as a legal matter.

The evidence below shows that the word-filter function exists only on Facebook. There is no evidence that Twitter offers a similar function to MOR or, if one exists, that she has taken advantage of it. So whatever merit the word-filter contention might have with respect to Defendants' Facebook accounts, it does nothing to immunize MOR's blocking of Mr. Garnier on Twitter, where he remains blocked. *See* 4-ER-669-671 ("You are blocked from following @MOR4PUSD and viewing @MOR4PUSD's Tweets."). This situation is akin to permanently barring Mr. Garnier from attending or speaking at a city council meeting.

Second, being blocked on Facebook social-media pages completely prevents Plaintiffs from expressing their reactions – whether favorable or unfavorable – to Defendants' communications with constituents. Meanwhile, people who have not been blocked are free to comment and to click the "like" button. *See, e.g.*, 8-ER-1709 (comment to MOR's content by Dawn Lovach Yocum and response thereto by MOR; also showing thumbs-up "like" emoticons), 1898 (comments to Zane's content by Dane White and Barbara Mayers; also showing thumbs-up "like" emoticons). Positive comments even draw favorable emoticon activity from Defendants. *See* 7-

ER-1670-1671 (MOR testifying that she gave some people a thumbs-up emoticon because "[i]t was nice of them to say something nice"); SER-16-19 (trial exhibit showing MOR's thumbs-up "like" responses to favorable comments).

Simply put, Defendants' reliance on a word filter to limit comments to their social-media content still has the effect of altogether precluding Plaintiffs from expressing any reaction – verbal or non-verbal – in the public forum where Defendants are choosing to engage their other constituents. The word filter therefore, as both a matter of fact and a matter of law, does not cure or avoid Defendants' years-long violations of Plaintiff's First Amendment rights.

### D.     Defendants' Appeal: A Determination on Fees/Costs Is Premature

There are two problems with Defendants' appeal as it relates to the District Court's decision to deny Plaintiffs' motion for attorney fees and Defendants' motion to retax costs without prejudice. *See* 1-ER-2-3. Not only is that decision not yet ripe for appeal, but it is legally wrong.

### 1.     The Motions' Denial Is Not Appealable

Defendants' appeal as it relates to the issue of fees and costs should be denied because the District Court's decision (made without prejudice) is not yet ripe for appellate review because the decision is not final owing to the pendency of this appeal and cross-appeal.

A post-judgment order that does not finally decide a post-judgment issue is usually not appealable. Dismissals with prejudice generally constitute final orders, while dismissals without prejudice generally do not. *Wakefield v. Thompson*, 177 F.3d 1160, 1162 (9th Cir. 1999). The precise issue presented here – at least with respect to the fee motion – is not novel. In *Reed v. Lieurance,* 863 F.3d 1196 (9th Cir. 2017), this Circuit ruled that a district court's order denying a motion for attorney fees without prejudice in a Section 1983 lawsuit was not a final decision because the district court clearly intended to revisit the question, if appropriate, after resolution of the pending appeal; as such, there was no appellate jurisdiction. *Id.* at 1212-1213. Likewise here: because the District Court denied the motions without prejudice because of the pending appeals, this Court lacks jurisdiction to review that decision now.

Defendants' appeal with respect to the motion for attorney fees and the motion to retax costs should therefore be rejected.

## 2.  Attorney Fees and Costs Are Recoverable under Section 1983

If this Court does reach the merits of Defendants' appeal as it relates to the fee motion, the appeal should again be rejected. Defendants' entire argument as it relates to attorney fees parrots what they put forward in opposition to Plaintiffs' fee motion. Plaintiffs' reply brief in support of that motion thus cited to the Supreme Court precedent that came ***after*** the legal authorities cited by Defendants in their opposition

brief.  *See* SER-7-9.  For some reason, that precedent is mentioned nowhere in Defendants' appellate brief.

In *Lefemine, supra*, 568 U.S. 1, the Supreme Court wrote as follows: "And we have repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that [prevailing-party] test" under Sections 1983 and 1988. *Id*. at 4.  Defendants' legal authorities all predate *Lefemine*, and the contention that Plaintiffs as prevailing cannot recover attorney fees – even if qualified immunity precludes them from recovering damages from Defendants – must be rejected. *Lefemine* was cited in Plaintiffs' reply brief below (*see* SER-7-9), but the case gets no mention by Defendants here.

Similarly, the Court should deny the appeal as it relates to Plaintiffs' recovery of costs.  A district court's award of costs is reviewed for abuse of discretion.  *Miles v. California,* 320 F. 3d 986, 988 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 54(d)(1), "there is a presumption that the prevailing party will be awarded its taxable costs." *Dawson, supra*, 435 F.3d at 1070.  "A district court deviates from normal practice when it refuses to tax costs to the losing party." *Save Our Valley v. Sound Transit,* 335 F.3d 932, 945 (9th Cir. 2003).

Assuming no change in the judgment adverse to Plaintiffs, there is simply no factual or legal reason why Plaintiffs should not recover their costs.  The logic of

*Lefemine* makes Plaintiffs prevailing parties even if all they get is declaratory and injunctive relief.

## VII. CONCLUSION

For all these reasons, this Court should reverse the District Court's ruling that Defendants are entitled to qualified immunity and allow Plaintiffs to recover money damages for the years of First Amendment violations they have been enduring. The remainder of the District Court's treatment of this case should be left intact.

## Certification of Word Count

I certify that this brief is set in 14-point Times New Roman font and contains less than 7,000 words, as counted by the WordPerfect program used to generate the brief.

Dated: October 22, 2021.          s/ Cory J. Briggs_____