CASE NOS. 21-55118 ; 21-55157
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

CHRISTOPHER GARNIER; KIMBERLY GARNIER,
Plaintiffs-Appellees

v.

MICHELLE O'CONNOR-RATCLIFF; T.J. ZANE,
Defendants-Appellants

---

CHRISTOPHER GARNIER; KIMBERLY GARNIER,
Plaintiffs-Appellants,

v.

MICHELLE O'CONNOR-RATCLIFF; T.J. ZANE,
Defendants-Appellees;

---

Cross Appeals from the United States District Court,
Southern District of California
The Honorable Roger T. Benitez
District Court No. 3:17-cv-02215-BEN-JLB

---

**PLAINTIFFS/APPELLEES' SUPPLEMENTAL BRIEF**

---

\*Cory J. Briggs (SBN 176284)
BRIGGS LAW CORPORATION
99 East "C" Street, Suite 203
Upland, CA 91786
Telephone: (909) 949-7115
Email: cory@briggslawcorp.com

Attorneys for Plaintiffs and Appellants/Appellees
CHRISTOPHER GARNIER AND KIMBERLY GARNIER

**Table of Contents**

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. This Court Has Previously Addressed the Second Element Outlined in *Lindke* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B. The First Element Outlined under *Lindke* Has Been Met . . . . . . . . . . 7

        1. Actual Authority to Speak May Come From Affirmative Written Law or Longstanding Practice . . . . . . . . . 7

        2. MOR and Zane Possessed Actual Authority to Speak on PUSD Board-Related Matters by Affirmative Written Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        3. MOR and Zane Possessed Actual Authority to Speak on PUSD Board-Related Matters by Longstanding Practice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C. The Act of Blocking on Social Media May Constitute State Activity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certification of Word Count. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **Table of Authorities**

Judicial Authorities

*Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . 6

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011). . . . . . . . . . . . . . . . . . . . . . . . 16

*City of San Jose v. Superior Ct.*, 2 Cal. 5th 608 (2017). . . . . . . . . . . . . . . . . . . . 13

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . 9

*Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . 11

*Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013) . . . . . . . . . . . . . . . . 9

*Garnier v. Poway Unified Sch. Dist.*, 2019 WL 4736208
    (S.D. Cal. Sept. 26, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158 (9th Cir. 2022). . 5, 6, 7, 9, 11, 12, 17

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) . . . . . . . . . . . . . . . . . . . . . . 9

*Karcher v. May*, 484 U.S. 72 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lindke v. Freed*, 601 U.S. 187 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*McDade v. West*, 223 F.3d 1135 (9th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . 9

*Monroe v. Pape*, 365 U.S. 167 U.S. (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024) . . . . . . . . . . . . . . . . . . . . . . 16

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). . . . . . . . . . . . . . . . . . . . . . 9

*Sanborn v. Chron. Pub. Co.*, 556 P.2d 764 (Cal. 1976) . . . . . . . . . . . . . . . . . . . 14

*Screws v. United States*, 325 U.S. 91 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Case: 21-55157, 07/25/2024, ID: 12898820, DktEntry: 57, Page 4 of 18

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994) . . . . . . . . . . 6

### Legislative Authorities

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 9, 15

Cal. Const., art. I, § 3(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Educ. Code § 35172(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

### Other Authorities

AUTHORIZE, Black's Law Dictionary (12th ed. 2024). . . . . . . . . . . . . . . . . . . 10

Cal. Sch. Bds. Ass'n, *School Board Leadership:*
    *The Role and Function of California's*
    *School Boards*, https://perma.cc/3C24-CTYA . . . . . . . . . . . . . . . . . . . . . . . 10

Page 4 of 17

# I. INTRODUCTION

This Court has directed Plaintiff-Appellees Christopher and Kimberly Garnier (collectively, "the Garniers") to file a supplemental brief "concerning the impact of the United States Supreme Court's opinion in *Lindke v. Freed*, 601 U.S. 187 (2024), on this case." Doc. 57 (Apr. 29, 2024). In *Lindke*, the Supreme Court held that "a public official's social-media activity constitutes state action under Section 1983 of Title 42 of the U.S. Code ('Section 1983' or '§ 1983') only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Lindke*, 601 U.S. at 198.[1]

# II. ARGUMENT

## A. This Court Has Previously Addressed the Second Element Outlined in *Lindke*

This Court has already fully addressed the second element of the *Lindke* framework in its prior decision on Appeal, and it ruled in favor of the Garniers, holding that Defendant-Appellants Michelle O'Connor-Ratcliff ("MOR") and T.J. Zane ("Zane") (collectively, the "Trustees" ) as elected Poway Unified School District ("PUSD") Trustees, "'purport[ed] ... to act in the performance of [their]

---

[1] Because the only issue in *Lindke* was the question of state action, nothing in the Supreme Court's decision affects in any way this Court's First Amendment-related holdings that the interactive spaces of the Trustees' social-media accounts were designated public fora, *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1179 (9th Cir. 2022) ("*Garnier*"), and that the Trustees' blocking decisions were not sufficiently narrowly tailored to satisfy the First Amendment, *see id.* at 1180-83.

official duties' through the use of their social media pages." *Garnier*, 41 F.4th at 1171 (quoting *Anderson v. Warner*, 451 F.3d 1063, 1069 (9th Cir. 2006), and *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir.2000)).[2]

The record supports that holding: "The Trustees identified themselves on their Facebook pages as "government official[s]," listed their official titles in prominent places on both their Facebook and Twitter pages, and in MOR's case included as the page's contact information only her official PUSD e-mail address. Zane, for his part, wrote that his Facebook page was "the official page for T.J. Zane, Poway Unified School District Board Member." *Garnier*, 41 F.4th at 1171.

The substance of the posts on the Trustees' social-media pages likewise concerned official business. O'Connor-Ratcliff's Facebook posts from the day she was sworn into the PUSD Board until the date of the summary judgment hearing are in the record. *See Garnier v. Poway Unified School District,* Docket No. 3:17-cv-02215 (S.D. Cal.), ECF 35-11. All that time, there were only three personal posts; everything else was PUSD-related and often phrased in the first-person plural. Zane's page, too, focused almost exclusively on PUSD matters.

---

[2] Zane is no longer a Trustee, as his term expired in December 2022. Br. for Petrs. 7 n.4, *O'Connor-Ratcliff v. Garnier* (No. 22-324). But Zane has not sought vacatur. Nor would that "extraordinary remedy," *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994), be appropriate; any mootness is entirely attributable to his choice to forego seeking re-election. *See id.* at 24-27; *Karcher v. May*, 484 U.S. 72, 82-83 (1987).

In short, "through appearance and content, the Trustees held their social media pages out to be official channels of communication with the public about the work of the PUSD Board." *Garnier*, 41 F.4th at 1171. Nothing in the Supreme Court's decision should lead this Court to revisit its holding that the Trustees "purported to exercise," *Lindke*, 601 U.S. at 198, the authority of their public office through their social-media pages.

The only remaining question is whether the first *Lindke* factor is met here – that is, whether the Trustees "possessed actual authority to speak on the State's behalf." *See Lindke*, 601 U.S. at 198. The record and California law show that they did. Indeed, although this Court's prior decision did not use the framework the Supreme Court announced in *Lindke*, its discussion of the relationship between the Trustees' operation of their social-media sites and the performance of their "official duties," *Garnier*, 41 F.4th at 1170; *see id.* at 1171-1172, shows that in operating the pages at issue the Trustees were exercising their authority to speak for the PUSD Board.

### B. The First Element Outlined under *Lindke* Has Been Met

#### 1. Actual Authority to Speak May Come From Affirmative Written Law or Longstanding Practice

Section 1983 provides a cause of action for damages and injunctive relief against defendants who act "under color of any statute, ordinance, regulation, custom, or usage, of any State" to deprive someone of a federal constitutional right. 42 U.S.C. § 1983. In *Lindke*, the Supreme Court announced a framework for determining when

a government official's speech is sufficiently "official" to constitute state action amenable to suit under Section 1983. As relevant here, the Court held that "a public official's social-media activity constitutes state action under § 1983 only if the official . . . possessed actual authority to speak on the State's behalf." *Lindke*, 601 U.S. at 198.

The Court's opinion in *Lindke* did not itself address in detail what it means to have "actual authority to speak on behalf of the State on a particular matter." *Lindke*, 601 U.S. at 204. The Court reiterated, however, that "the state-action doctrine demands a fact-intensive inquiry." *Id.* at 197. Thus, the Court explained, an official's authority to speak may be "rooted in written law or longstanding custom." *Id.* at 200. And the Court emphasized that "if an official has authority to speak for the State, he may have the authority to do so on social media ***even if the law does not make that explicit***." *Id.* (emphasis added). Moreover, when an official ***blocks*** an individual from a social-media page – as opposed to, for example, merely removing one of an individual's posts or reactions to the official's posting – a court must ask whether the official "engaged in state action with respect to ***any*** post" to which the individual sought access. *Id.* at 204 (emphasis added).

Longstanding Section 1983 precedent also establishes that a government employee or elected official can speak with "actual authority" even if the employee's or official's words do not themselves bind the government or constitute official

policy. "[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government [itself] to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)). But individual government employees can be liable for their own "constitutional tort[s]" even when the government for which they work cannot also be held responsible. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). That recognition flows from the proposition that "Congress enacted § 1983 to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Hafer v. Melo*, 502 U.S. 21, 28 (1991) (internal quotation marks omitted) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 243 (1974), and *Monroe v. Pape*, 365 U.S. 167 U.S. 171-72 (1961)); *see also Garnier*, 41 F.4th at 1173 (rejecting argument that Trustees could be state actors only during "a properly convened meeting" of PUSD Board as a whole because their power should be construed solely to "offer[ing] a matter for consideration or vot[ing] on a matter."). So, for example, in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court recognized that a school principal can be held liable for a constitutional violation, even when he is not a final policymaker whose acts would subject the school district to liability. *Id.* at 736-738; *see also Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066-1067 (9th Cir.

2013) (allowing First Amendment retaliation claim to proceed against individual government official even though he was not final policymaker for his agency).

Accordingly, as long as communicating with the public on particular issues is part of the government actor's job, that actor possesses actual authority to speak. It does not matter whether he or she is a final policymaker with respect to the content of the speech.

### 2. MOR and Zane Possessed Actual Authority to Speak on PUSD Board-Related Matters by Affirmative Written Law

The Trustees themselves acknowledged before the Supreme Court that they were "empowered to inform the public about District activities," Br. for Petrs. 49-50, *O'Connor-Ratcliff v. Garnier* (No. 22-324) (citing Cal. Educ. Code § 35172). As Black's Law Dictionary recognizes, to "empower" is synonymous with "to give legal authority." AUTHORIZE, Black's Law Dictionary (12th ed. 2024). Both California law and PUSD's board bylaws authorized the Trustees to communicate the content they posted to their social-media accounts. California law expects school boards to "[i]nform and make known to the citizens of the district, the educational programs and activities of the schools therein." Cal. Educ. Code § 35172(c). School board members in California have "a responsibility to involve the community in appropriate, meaningful ways." Cal. Sch. Bds. Ass'n, *School Board Leadership: The Role and Function of California's School Boards* at 6, https://perma.cc/3C24-CTYA.

To fulfill that responsibility, the PUSD Board's bylaws direct members to "ensure that the district is responsive" and "involve[] the community" in decision-making. *Garnier*, 41 F.4th at 1172 n.9 (quoting PUSD Board Bylaw 9000(a), https://perma.cc/A3EH-7JYW). In this era of social media, the Bylaws expressly expect that Trustees may do so, individually as "Board Members," through "social networking sites." PUSD Board Bylaw BB 9010(a), https://perma.cc/325K-PULK. And the Bylaws identify a class of "*permissible* electronic communications concerning district business," PUSD Board Bylaw BB 9012(a), https://perma.cc/5ZAF-B7B4 – that is, communications Board members have authority to make. Those communications "include, **but are not limited to**, dissemination of Board meeting agendas and agenda packets, reports of activities from the Superintendent, and reminders regarding meeting times, dates, and places." *Id.* (Emphasis added). These were precisely the kind of information the Trustees posted on their social-media sites. *See Garnier*, 41 F.4th at 1165, 1171; *Garnier v. Poway Unified Sch. Dist.*, 2019 WL 4736208, at *7 (S.D. Cal. Sept. 26, 2019)**.**

Moreover, as the District Court found, "the content of many of [the Trustees'] posts was possible because they were 'clothed with the authority of state law.'" *Garnier v. Poway Unified Sch. Dist.*, 2019 WL 4736208, at *7 (quoting *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019)). Indeed, a substantial number of MOR's and Zane's social-media posts involved reports of visits they made to schools in their

official capacity – access they were authorized to have, especially in this era of heightened school security, *only because of their governmental positions*. To give just one telling example, on March 6, 2015, Zane posted on his "official" Facebook page: "Paid a visit to Del Norte High School today just to check in with principal Greg Mizel and see firsthand how well the students were dealing with the threat of violence that made local news. Unsurprisingly, they are doing quite well." *Garnier v. Poway Unified School Dist.*, ECF No. 34-28 at 2. This was a post to which Kimberly Garnier responded, raising concerns about death threats involving Black students at the school. *Id*. Had the post occurred during the time Zane blocked her from his Facebook page, *see Garnier*, 41 F.4th at 1166, she would have been prevented from responding. There is simply no way to characterize either Zane's visit or his report about it as lying within "the ambit of [his] personal pursuits." *Lindke*, 601 U.S. at 196 (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945) (plurality opinion). Both the visit and the subsequent report were official action.

Finally, the Bylaws' additional regulations regarding Trustees' communications reinforce the conclusion that their communications about District-related matters involve the exercise of government authority. For example, the Bylaws remind Trustees that their communications on social-networking and similar sites should be "respectful, courteous, and professional" and "model good behavior for district students and the community," and that "the disclosure requirements of the

California Public Records Act" ("CPRA") may apply to their electronic communications on matters involving the District, PUSD Board Bylaw BB 9010(b), https://perma.cc/325K-PULK. The CPRA applies to District-related communications even on sites that are not under the District's aegis, as long as the communications relate to the public's business prepared by a government employee or official as part of his or her official responsibilities. *See City of San Jose v. Superior Ct.*, 2 Cal. 5th 608, 617 (2017). So once again, the Board's Bylaws address communications that are authorized and regulated precisely because they are part of the official duties of the Trustees. Indeed, the Bylaws – anticipating the Supreme Court's discussion in *Lindke*, *see* 601 U.S. at 202 (discussing labels and disclaimers) – direct Trustees to "identify personal viewpoints as such and not as the viewpoint of the Board." PUSD Board Bylaw BB 9010(a) ("The Governing Board recognizes the responsibility of Board members in their role as community leaders to participate in public discourse on matters of civic or community interest, including those involving the district, and their right to freely express their personal views."). That directive presupposes that otherwise, especially when discussing information to which they had access because of (and often only because of) their Board position, the Trustees are exercising official authority.

### 3. MOR and Zane Possessed Actual Authority to Speak on PUSD Board-Related Matters by Longstanding Practice

In addition to the affirmative "written law," *Lindke*, 601 U.S. at 201, that supports finding actual authority here, there is longstanding custom or usage in California that government officials are not only authorized to report to the public and seek public input but indeed are expected to do so. *See, e.g.,* Cal. Const., art. I, § 3(b)(1) (stating that because "[t]he people have the right of access to information concerning the conduct of the people's business," the "writings of public officials and agencies shall be open to public scrutiny"). As a matter of California law, "[a] governmental officer's discussions with the public or press regarding the functioning of his office" are "duties incident to the normal operations of that office." *Sanborn v. Chron. Pub. Co.*, 556 P.2d 764, 769 (Cal. 1976). Thus, those communications are authorized by custom or usage to the same extent that the underlying actions of the government officer are authorized.

The fact that the Trustees used social-media accounts that were not provided by PUSD does not change the conclusion that they were engaged in state action when they discussed District business, solicited public involvement and feedback, and responded to public concerns. As an empirical matter, government employees and officials often use personal resources to carry out authorized communications. For example, PUSD did not provide the Trustees with individual office space. Tasks such

as preparing for meetings were done in their homes or personal offices. Nevertheless, when they did so, they still exercised the authority of the State.

### C. The Act of Blocking on Social Media May Constitute State Activity

In the Supreme Court, the Trustees argued that blocking someone from a social-media site is not state action because blocking "is a generally available function of the platforms that Facebook and Twitter offer," rather than something "'made possible only because'" an account holder is "'"clothed with the authority of state law."'" Br. for Petrs. 23, *O'Connor-Ratcliff v. Garnier* (No. 22-324) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). But the Supreme Court's recognition in *Lindke* that "blocking" an individual on a "page-wide basis" can give rise to liability under Section 1983, *Lindke*, 601 U.S. at 204, forecloses this argument. The fact that the ability to block someone from a Facebook or Twitter page is a product of those platforms' privately owned architecture does not change the state-action analysis.

Even independently of *Lindke*'s square holding, the Trustees' argument is erroneous, for it would prove too much. Even on government-owned and government-operated social-media accounts, the ability to block comes from a generally available function that any account holder can use. "[W]hatever the challenges of applying the Constitution to ever-advancing technology," basic constitutional principles do not change "when a new and different medium for

communication appears." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011); *see also Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2405 (2024) (analogizing social-media platforms, when they curate the feeds they create, "to the editors, cable operators, and parade organizers" the Court considered in prior First Amendment cases).

Comparably, no one could argue with a straight face that using the "remove" function on Zoom to remove a member of the public from an actual school board meeting would not be state action. Using the "remove" function of a private Zoom account to remove constituents from a virtual town-hall meeting or informal Q&A is similarly the digital equivalent of physically expelling or excluding constituents from an in-person meeting. It would be absurd to treat the latter but not the former as state action simply because the former occurs through a publicly available digital tool. Blocking someone from social-media pages used for a public official's job responsibilities and that present themselves as official pages is the digital equivalent of locking a door to the government office or removing a constituent from a town-hall meeting; in all cases, an official is a state actor.

### III. Conclusion

For the foregoing reasons, this Court should reaffirm its holding that "the Trustees violated the Garniers' First Amendment rights by blocking them from the

Trustees' social media accounts and that the district court was therefore correct to grant the Garniers declaratory and injunctive relief." *Garnier*, 41 F.4th at 1183.

## Certification of Word Count

I certify that this brief is set in 14-point Times New Roman font and contains less than 3,500 words, as counted by the WordPerfect program used to generate the brief.

Dated: July 25, 2024                                            s/ Cory J. Briggs

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** | 21-55118 and 21-55157

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Plaintiffs/Appellees' Supplemental Brief

**Signature** | s/Ruth Flores  **Date** | July 25, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 15**  *Rev. 12/01/2018*